UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

Jesse Lee Dunaway, : Case No. 1:14-cv-772
:
    Petitioner, :
:
vs. :
:
Warden, Lebanon Correctional Institution, :
:
    Respondent. :

**ORDER**

Before the Court in this habeas corpus proceeding are Petitioner's objections to the Magistrate Judge's Report and Recommendation. The Magistrate Judge recommends that the Court grant Respondent's motion to dismiss the petition, because Petitioner failed to timely file his petition within the one-year statute of limitations contained in 28 U.S.C. §2244(d)(1).

For the following reasons, the Court agrees with and adopts in full the Magistrate Judge's Report.

**FACTUAL BACKGROUND**

Jesse Dunaway was indicted by the Butler County, Ohio grand jury in May 2008, on a variety of charges that included attempted murder, aggravated burglary, felonious assault, and domestic violence. All charges arose from two incidents involving his ex-girlfriend. The Magistrate Judge's Report thoroughly and accurately sets forth the charges against Dunaway, and the proceedings at the trial court level that led up to Dunaway's no-contest plea in February 2009, and his sentencing hearing on May 11, 2009. Dunaway was sentenced to an aggregate term of 20 years, with several different

consecutive and concurrent sentences imposed for each count of the indictment. Dunaway timely appealed his conviction and sentence, and the Ohio court of appeals rejected his appeal by written order dated May 24, 2010.

Through newly-substituted counsel from the public defender's office, Dunaway sought review of that decision by the Ohio Supreme Court, asserting that the trial court erred in imposing consecutive sentences on certain counts. Dunaway also filed several pro se motions in the Supreme Court, alleging a variety errors by the trial court and claiming ineffective assistance of counsel. On September 29, 2010, the Ohio Supreme Court summarily dismissed Dunaway's appeal as not involving a substantial constitutional question. The court also denied all of Dunaway's pro se motions.

While his direct appeal was pending, Dunaway filed his first pro se petition for post-conviction relief on October 14, 2009, asserting two claims generally alleging ineffective assistance of counsel, and prosecutorial and judicial misconduct. He generally claimed that he had been led to believe he could receive a lighter sentence than was eventually imposed by the court, and that the trial judge ignored his complaints about his lawyer. He also filed a pro se motion to withdraw his no-contest plea, and challenged his sentence as void. The trial court denied all relief on December 22, 2009. Dunaway filed two notices of appeal on January 22 and 25, 2010, as well as a motion seeking more time in which to appeal the trial court's denial of post-conviction relief. The court of appeals denied his appeal as untimely.

He subsequently filed a motion to "reinstate" his postconviction appeal in August 2010, which was summarily denied on August 31, 2010. Dunaway sought review of that decision by the Ohio Supreme Court, contending that prison mail delays caused his

untimely filing.  After the State waived filing a response to Dunaway's motion, the Ohio Supreme Court declined to hear his appeal on December 15, 2010.

The record also reflects Dunaway's attempt to pursue a second post-conviction petition which he filed on December 29, 2009 (a week after the trial court denied his first petition), seeking to withdraw his plea.  In this petition, he claimed that he tried to accept a sentence of 15 years that had allegedly been offered by the state, but his trial counsel lied to him which resulted in a different offer.  He claimed that his trial counsel then ignored his request to withdraw his plea.  He also filed additional motions, asserting that he had a right to withdraw his plea, that he would have better "legal chances" to appear before a "more suitable" judge (Doc. 10-2, Ex. 52 at PAGEID 948), and seeking a hearing on his request for post-conviction relief.  The Magistrate Judge noted that the trial court's docket does not reflect a ruling on any of the motions Dunaway filed on December 29, nor any further attempt by Dunaway to pursue them, and he therefore applied the presumption that they were all denied.  The Magistrate Judge cited State v. Olah, 146 Ohio App.3d 586, 767 N.E.2d 755, 760 n.2 (Ohio Ct. App. 2001), and several decisions from this Court applying that presumption in similar circumstances.

On December 20, 2011, two years later, Dunaway filed another post-conviction petition, this time claiming he had newly discovered evidence.  He claimed that he was denied a fair trial because the trial judge "was contacted and given information about the case from a relative who was involved in this case which caused the judge to become bias[ed] against the defendant." (Doc. 10-2, Ex. 55 at PAGEID 345)[1]  He also

---

[1] Dunaway had filed grievances with the state bar association against Judge Oney and the prosecutor in his criminal case, alleging ethical violations against each of

alleged that his lawyer was ineffective in failing to present his personal physician to testify about his competency to stand trial. The state opposed the petition, arguing it was too late and was barred by Ohio's res judicata doctrine. Judge Oney, who presided over Dunaway's criminal case, recused herself from Dunaway's post-conviction case, and Judge Charles Pater was assigned. (Doc. 10-2, Ex. 58) On January 10, 2012, Judge Pater denied Dunaway's post-conviction petition. (Doc. 10-2, Ex. 60, PAGEID 994-995) Dunaway filed a notice of appeal from that order on February 6, 2012, and the court of appeals affirmed the trial court's order denying his petition. (Doc. 10-2, Ex. 64, PAGEID 1024) Dunaway sought review by the Ohio Supreme Court on November 2, 2012, which the Supreme Court denied on February 6, 2013.

Dunaway filed his petition for habeas corpus relief in this Court on August 22, 2014. (Doc. 1) The official file-stamped date is "September 31, 2014," but the Magistrate Judge properly used August 22, the date that Dunaway claims he mailed his petition from the state prison, as the effective filing date. Dunaway raises four grounds for relief: ineffective assistance of counsel; his plea was unconstitutional based on his mental illness, ineffective assistance of counsel, and judicial bias; a separate claim of judicial bias; and a claim that he was mentally incompetent to stand trial. The state filed a motion to dismiss, arguing that Dunaway's petition is untimely under the AEDPA's one-year statute of limitations set forth in 28 U.S.C. §2244(d). Dunaway opposed the state's motion, claiming the statute of limitations is inapplicable because the state trial

---

them. Regarding Judge Oney, he alleged that a David Oney, who claimed to be Judge Oney's nephew, had spoken to the Judge about Dunaway sometime before the indictment. Dunaway claimed that he had taken a car and a knife belonging to David Oney's wife Glenda, and used them to commit the crimes charged in the indictment.

court lacked jurisdiction over his case, and suggesting that equitable tolling should apply in the interests of justice.  (Doc. 16)   The Magistrate Judge concluded that Dunaway's petition was time-barred, and recommended that this Court dismiss the petition.

## DISCUSSION

The AEDPA (which undisputably applies to Dunaway's petition) includes a one-year statute of limitations. The statute states:

> (d) (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of–
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. §2244(d).

The Magistrate Judge concluded that even under the most generous time calculations, Dunaway's petition is clearly time-barred under either Section 2244(d)(1)(A) or (D), the only two statutory sub-sections that could apply to Dunaway's claims.  Section 2244(d)(1)(A) starts the statute on the date that Dunaway's underlying

judgment became final; and subsection (D) starts on the date that the factual predicate of the claims could have been discovered through the exercise of due diligence. Dunaway's conviction was final on December 28, 2010, 90 days after the Ohio Supreme Court dismissed his direct appeal (and within which time Dunaway could have filed a petition for certiorari with the United States Supreme Court). Dunaway's first and second post-conviction petitions and motions did not toll that one-year period, because all proceedings on those petitions were concluded **before** December 28, 2010. His December 20, 2011 post-conviction petition was filed within one year of December 28, 2010; the statute was then tolled for 356 days until the Ohio Supreme Court finally rejected that petition on February 7, 2013. The statute then began again and expired, at the latest, on February 16, 2013. And because February 16, 2013 was a Saturday, the Magistrate Judge extended the date to the following Monday, February 18.[2] Dunaway's federal petition was not filed until August 22, 2014, well over a year later.

With regard to Section 2244(d)(1)(D), the Magistrate Judge concluded that Dunaway was well aware of the facts giving rise to his claims about Judge Oney's purported conflict of interest more than one year before his petition was filed. In fact, based on statements in a notarized letter apparently signed by David Oney and dated November 15, 2010, Dunaway knew about Oney's purported relationship with Judge Oney at the time Dunaway committed his crimes in March 2008. David Oney's letter stated that he and his wife had spoken to the prosecutor's office and local police about Dunaway

---

[2] Because President's Day fell on February 18 that year, the Court would extend that time by one additional day, to February 19.

> ... stealing our car and knife to commit his crime and our involvement with him in the matter committed in March 2008. ... [Dunaway's] family had made several attempts to contact me by phone and mail to question me about the information I told Jessie Dunaway after his car accident when I [picked] him up in Ohio and brought him to my house in Indiana, after the accident. Jessie was discussing with me the events that caused his accident and how he needed legal help[.] I told him that I would call my Aunt Judge Patricia Oney of the Butler County Common Pleas Court to see if I could help him in any way and he said it would not help.

(Doc. 10-2, at PAGEID 969) David Oney's letter does not say that he actually talked to Judge Oney at any time about Dunaway. And, as the Magistrate Judge noted, Judge Oney's response to the state bar association concerning Dunaway's grievance states that neither she nor her husband know anyone named David Oney, and that neither she nor any member of her staff ever spoke with an individual by that name about Dunaway's case. (Doc. 10-2, Ex. 55, at PAGEID 967) In any event, for purposes of determining the applicable statute of limitations, Dunaway attached this letter to his December 2011 post-conviction petition, in which he claimed that "newly discovered" evidence entitled him to relief. Since he was in possession of this letter at that time, the Magistrate Judge concluded that Dunaway's federal habeas claims are untimely under Section 2244(d)(1)(D), as he discovered the facts supporting his claims more than one year before his petition was filed.

Finally, the Magistrate Judge concluded that equitable tolling did not apply to render Dunaway's petition timely. Under Holland v. Florida, 560 U.S. 631, 649 (2010), Dunaway could be entitled to equitable tolling if he could show that he diligently pursued his rights, and some extraordinary circumstance beyond his control prevented his timely filing. The Magistrate Judge noted that Dunaway had not satisfied either of these Holland requirements. Dunaway's argument that "structural error" at his trial

(presumably the purported conflict of interest under which Judge Oney labored) excused his late filing was also rejected. The Magistrate Judge cited several cases finding that similar allegations of jurisdictional defects do not suffice to excuse a petitioner's late filing.

In his objections, Dunaway argues that the statute of limitations does not apply to him, because the trial court "lacked subject matter jurisdiction ab initio." He suggests that this differentiates his case from those cited by the Magistrate Judge involving faulty indictments. He repeats his allegation that Judge Oney was biased because her nephew could have been an accomplice to his crimes, suggesting that David Oney "provided" Dunaway with the car and the knife that Dunaway concedes he used to commit the crimes charged in the indictment.[3] He suggests that this "extreme" judicial bias entitles him to an automatic reversal, and that United States v. Cotton, 535 U.S. 625 (2002), Arizona v. Fulminante, 499 U.S. 279 (1991), and other Supreme Court cases[4] support his contention.

Cotton involved an appeal from convictions and sentences for drug trafficking; while the defendants' appeal was pending in the federal court of appeals, the Supreme Court held in Apprendi v. New Jersey, 530 U.S. 466 (2000) that any facts that increased the penalty beyond the statutory maximum must be submitted to the jury. The indictment in Cotton's case did not specify a drug quantity; and at sentencing, the

---

[3] David Oney's letter states that Dunaway **stole** the car and the knife.

[4] The Court is unable to locate "Tomey v. Ohio" or "Nationwide" which are referenced in Dunaway's objections. Tumey v. Ohio, 273 U.S. 510 (1927) required reversal of a conviction on direct appeal because the trial judge had a direct financial interest in the outcome of the case.

district court made factual determinations of the drug quantities involved and imposed enhanced sentences, without objection from defendants. On appeal, the government conceded plain error and the court of appeals reversed. But the Supreme Court disagreed, finding that even that plain error did not require reversal or re-sentencing, noting the longstanding rule "that a constitutional right may be forfeited in criminal as well as civil cases by the failure to make timely assertion of the right ...". Id., 535 U.S. at 634, quoting Yakus v. United States, 321 U.S. 414, 444 (1944)). (Arizona v. Fulminante is even less relevant, as it involved the question of whether a coerced confession can be considered harmless error; there was no issue or discussion of judicial bias in the case.)

The record in this case establishes that Dunaway knew about David Oney and his purported relationship to Judge Oney at least by the time of his trial, and certainly by the time he lodged ethics complaints against both Judge Oney and the Butler County prosecutor. Those complaints were filed sometime prior to August 10, 2011, the date on which the bar association notified Judge Oney of his complaint,[5] and was undeniably more than one year before he filed his petition in this case.

Dunaway then accuses the Magistrate Judge (and the respondent) of "ignoring" the fact that he mailed a federal habeas petition to this Court at the same time that he filed his December 2011 state post-conviction petition raising the claim of judicial bias. He asserts that he mailed this petition from the Lebanon Correctional Institution, and

---

[5] Dunaway also fails to acknowledge Judge Pater's conclusion that David Oney's letter (assuming it was authentic) did not state that he actually talked with Judge Oney at any time, or that Judge Oney did not know anyone named David Oney.

when he did not receive a ruling from this Court on his request to hold his petition in abeyance, he assumed all was well. There is absolutely no evidence supporting Dunaway's late blooming assertion that he attempted to file a federal petition at any time prior to August 2014. Moreover, even if he had, his unwarranted assumption that his petition was filed and/or his motion to stay was granted do not establish that he was reasonably diligent in pursuing his claims. He also suggests that ineffective assistance of his trial counsel should excuse any procedural default with respect to his federal claims. AEDPA's statute of limitations requires the Court to dismiss untimely filed claims, regardless of whether or not the doctrine of procedural default would also bar the court from reaching the merits of any claims raised in an untimely petition.

Dunaway's objections simply fail to address most of the Magistrate Judge's statements and conclusions, and he simply reargues issues he raised in opposition to the motion to dismiss. His arguments are not sufficient to show that the Magistrate Judge's conclusions are clearly erroneous or contrary to law.

As required by 28 U.S.C. §636(b)(1)(C) and Federal Rule of Civil Procedure 72(b), the Court has conducted a de novo review of the record in this case. Upon such review, the Court finds that Dunaway's objections to the Magistrate Judge's Report are not well taken, and they are overruled. The Report is adopted in full, and the Court hereby dismisses Dunaway's petition for a writ of habeas corpus with prejudice.

Dunaway also objects to the Magistrate Judge's recommendation that he be denied a certificate of appealability. He suggests that no reasonable jurist could conclude that his petition lacks merit. For the reasons discussed above, the Court disagrees. The Court finds that a certificate of appealability should not issue with

respect to the petition, because reasonable jurists would not find it debatable whether this Court is correct in its ruling with respect to Dunaway's claims.  See <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000).

      The Court certifies, pursuant to 28 U.S.C. §1915(a)(3), that an appeal of this Order would not be taken in good faith, and denies Dunaway leave to appeal in forma pauperis.  See <u>Kincade v. Sparkman</u>, 117 F.3d 949, 952 (6th Cir. 1997).  Dunaway is free to seek leave to appeal in forma pauperis from the Sixth Circuit Court of Appeals, pursuant to Federal Rule of Appellate Procedure 24.

      SO ORDERED.

      THIS CASE IS CLOSED.

Dated: September 8, 2015                    <u>s/Sandra S. Beckwith</u>
                                                       Sandra S. Beckwith, Senior Judge
                                                       United States District Court